**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **WESLEY MICHAEL TUTON,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **No. A-12-CV-444-LY** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice–** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court is pro se Petitioner Wesley Michael Tuton's Petition for Writ of Habeas Corpus (Document 1),[1] Answer with Brief in Support of Respondent, Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (Document 11), and Petitioner's Reply (Document 13).  For the reasons set forth below, the undersigned concludes that the petition should be denied.

---

[1] The petition includes an attached Memorandum of Law ("Mem.").

STATEMENT OF THE CASE

## I.   PROCEDURAL HISTORY

Tuton challenges the Director's custody of him pursuant to a judgment and sentence of the 167th District Court of Travis County, Texas, in cause number D-1-DC-10-904003. *Ex parte Tuton*, No. WR-76,202-02 at 2-4, 20-23.   After Tuton pleaded not guilty to charges of sexual assault of a child (count I), indecency with a child by contact (count II), and indecency with a child by exposure (count III), a jury found Tuton guilty of counts I and II and not guilty of count III on June 17, 2010. *Id.* at 15-17, 20-24, 54.   The trial court then sentenced Tuton to twenty-year sentences for both convictions, to run concurrently. *Id.* at 20-24.   Tuton did not file an appeal. *Id.* at 19; Pet. at 3.

On May 31, 2011, Tuton filed state habeas applications challenging both convictions. *Ex parte Tuton*, No. WR-76,202-02 at 24, 36.   The Texas Court of Criminal Appeals denied the applications without written order on findings of the trial court without hearing on April 25, 2012. *Id.* at cover.   Tuton subsequently filed his federal petition on May 18, 2012.[2] Pet. at cover.

## II.   TUTON'S CLAIMS FOR RELIEF

Tuton contends that he is entitled to habeas relief based on the following grounds:

    1.      His trial attorney provided constitutionally ineffective assistance when he:

        (a)      inadequately prepared for trial;

        (b)      refused to contact potential witnesses from Tuton's "subpoena list";

        (c)      failed to adequately consult Tuton;

        (d)      failed to object to an invalid indictment;

---

    [2] Tuton did not date his petition or supporting memorandum.   The Court docketed the petition as filed on May 18, 2012.   Pet. at cover.

(e)     failed to attack the credibility of the alleged victim; and

(f)     failed to investigate Tuton's innocence.

2.     Tuton's waiver of his direct appeal rights was involuntarily entered.

3.     The indictment was void and defective.

4.     Tuton is actually innocent of his sex-crime convictions.

Pet. at 6-8; Mem. at 1-2.

## III.   LIMITATIONS/EXHAUSTION/SUCCESSIVE PETITION

The Director does not dispute that Tuton has exhausted his state court remedies for the claims

presented by his petition.  Answer at 4.  The Director also does not assert that the petition is barred

by limitations, 28 U.S.C. § 2244(d), or subject to the successive petition bar, 28 U.S.C. § 2244(b).

## DISCUSSION

## I.   REVIEW UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

The Supreme Court has summarized the basic principles that have grown out of the Court's

many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.  *See Harrington*

*v. Richter*, 562 U.S. –, – , 131 S. Ct. 770, 783-85 (2011).  The Court has noted that the starting point

for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant
to the judgment of a State court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings unless the adjudication of
the claim–

(1)     resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d).  The Court has further noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  *Harrington*, 562 U.S. at –, 131 S. Ct. at 784.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.*  Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted).  The Court noted that it had previously concluded that "a state court need not cite or even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)).  When there is no explanation with a state-court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.*  And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* explained, § 2254(d) permits the granting of federal habeas relief in only three circumstances:  (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 785 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the

4

relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state-court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

## II.    TUTON'S CLAIMS

Having independently reviewed the state-court record and Tuton's asserted claims, the undersigned concludes that there is nothing unreasonable or contrary in the state court's application of clearly established federal law or in its determination of facts in light of the evidence, as discussed below.

### A.    Ineffective Assistance of Trial Counsel

In Tuton's first claim, he identifies several purported examples of constitutionally ineffective assistance provided by his defense attorney. Pet. at 6-7. The state habeas court found that trial

counsel provided constitutionally adequate representation. *Ex parte Tuton*, No. WR-76,202-02, Supp. at 15. The Court of Criminal Appeals agreed with the finding when it rejected Tuton's state petition on the merits. *Id.* at cover.

### 1.    Standard for Ineffective-Assistance Claims

Ineffective assistance of counsel claims are analyzed under the well-settled requirements set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

For the first requirement, the proper measure of attorney performance is "simply reasonableness under prevailing professional norms." *Id.* at 688. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-89. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court has established that counsel should be "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and cautioned against an "'intrusive post-trial inquiry into attorney performance'" and the "'tempt[ation] for a

defendant to second-guess counsel's assistance after conviction or adverse sentence.'" *Cullen v. Pinholster*, – U.S. –, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 688-90).

For the second requirement, the question is whether there is a reasonable probability that, absent the alleged error, the result of the proceeding would have been different, a question that must be considered in the context of the entire evidence. *Strickland*, 466 U.S. at 694-95. A reasonable probability is "'a probability sufficient to undermine confidence in the outcome,'" *Pinholster*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 694), which requires a "'substantial,' not just 'conceivable,' likelihood of a different result," *id.* (quoting *Harrington*, 562 U.S. at –, 131 S. Ct. at 791).

Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a substantial likelihood that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*; *Strickland*, 466 U.S. at 688, 694. Because a habeas petitioner must satisfy both *Strickland* requirements to demonstrate ineffective assistance, a failure to establish either deficient performance or prejudice makes it unnecessary to consider the other requirement. *Id.* at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

In addition to the "highly deferential" view that the Court takes of counsel's performance under *Strickland*, 466 U.S. at 689, the Court is also limited in its examination of such claims by the "'deferential lens of § 2254(d).'" *Pinholster*, 131 S. Ct. at 1404 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2 (2009)). In this way, the Court's review of the state habeas court's determination of ineffective assistance claims is "'doubly'" deferential. *Harrington*, 562 U.S. at –, 131 S. Ct. at 788 (quoting *Knowles*, 556 U.S. at 123).

As discussed below, Tuton's ineffective-assistance claims fail to satisfy *Strickland* and the AEDPA's prerequisites.

### 2.    Tuton's Ineffective-Assistance Claims

Tuton claims that his trial counsel provided constitutionally ineffective assistance by:   (1) inadequately preparing for trial; (2) refusing to contact potential witnesses from Tuton's "subpoena list"; (3) failing to adequately consult Tuton; (4) failed to object to an invalid indictment; (5) failing to attack the credibility of the alleged victim; and (6) failing to investigate Tuton's innocence.  Pet. at 6-8; Mem. at 1-2.

The state habeas court rejected Tuton's claims with the following determinations:

4.    Applicant alleges that his counsel was ineffective because he did not call any witnesses requested by applicant, coerced him to waive his appeal by threatening him with ninety-nine years in prison, would not object to the indictment alleging the wrong offense date, and did not attack the credibility of the complainant for being a member of the Bloods gang, having a criminal record, or making sex abuse allegations against two other men.

5.    Applicant does not allege what his witnesses might have testified, so does not show that failure to call them affected the jury's verdict.  His waiver of appeal was in exchange for abandonment of enhancement allegations which would have increased his potential sentences to ninety-nine years, and might have increased his minimum punishment to twentyfive years.  Applicant does not allege facts showing that his alleged impeachment evidence would have been admissible for impeachment.

6.    Any error in the alleged date of commission would not render the indictment defective.

*Ex parte Tuton*, No. WR-76,202-02 at 54-55.

The trial court also reached the following additional determinations:

c)    Trial counsel maintains that Applicant's allegation that he was told to waive appeal or face 99 years imprisonment is false.  Prior to trial, counsel discussed with Applicant the options available and advised him as to the

8

possible outcomes on punishment.  After the jury found him guilty, Applicant was concerned about receiving a life sentence.  The lead prosecutor had indicated to trial counsel that the State was intending to ask for a life sentence, and trial counsel's impression was that the trial court would assess a sentence in excess of 25 years.  The State offered a lower sentence if Applicant waived appeal to give some finality to the victim.  Trial counsel presented . . . [illegible] who willingly accepted the deal.

d)      As for establishing the victim's bias with prior accusations, trial counsel elaborates that at trial, as instructed by Applicant, he did cross-examine the complainant about prior allegations against two other individuals.  The complainant admitted that nothing came of the prior allegations, and counsel intimated that that was because they were not true.  Counsel recounts the various avenues he used to attack the victim's credibility, including portraying her as a drug addict with a history of criminal conduct.  However, as he had told Applicant, this did not have the effect Applicant had hoped and instead made her look more like a victim.

e)      Applicant has failed to provide any additional evidence that would refute the victim's testimony.

f)      Based on trial counsel's credible affidavit, this Court finds that trial counsel did not tell Applicant that he would receive a 99-year sentence if he did not waive his appeal.   Applicant knowingly and willingly accepted the punishment offer after the jury found him guilty in order to limit his exposure to a higher sentencing.

g)      Further, this Court finds that at trial, counsel did cross-examine the victim regarding prior false sexual assault accusations against two other individuals among other things, in order to challenge her credibility.

h)      This Court concludes that counsel rendered effective representation and that his performance was neither deficient nor did it result in prejudice.  *See Strickland v. Washington*, 466 U.S. 668 (1984).

*Ex parte Tuton*, No. WR-76,202-02, Supp. at 14-15.  The Court of Criminal Appeals agreed with these findings when it denied habeas relief.  *Id.* at cover.

In response to Tuton's ineffective-assistance claims in the state habeas court, his defense counsel provided the following explanations by affidavit:

9

3.      Part one of the court's order directing this affidavit inquires whether I advised Tuton that he would be sentenced to 99 years if he did not waive his right to appeal. Tuton's allegations in this regard are entirely false. Prior to the commencement of trial, I thoroughly discussed with Tuton his punishment trial options, and he knowingly chose to have punishment set by the court in the event of a conviction. After the evidence on guilt-innocence, the jury returned a verdict of guilty for the offenses of Second Degree Aggravated Sexual Assault of a Child and Second Degree Indecency with a Child by Contact. Because Tuton had one prior felony conviction, his punishment range was not less than 20 years nor more than 99 years or life. There existed a question as to whether Tuton's other final felony conviction was a prior conviction or whether this conviction was subsequent to the events for which he had just been convicted. If the court had ruled against Tuton on his prior convictions, then his punishment range would have been not less than 25 years nor more than 99 years or life. If the court had ruled in favor of Tuton on this issue, then Tuton's punishment range would have been not less than 5 years nor more than 99 years or life. When I met with Tuton after the jury verdict, he was worried about being sentenced to life by the trial court, and with good reason. Tuton had directed that I go hard after the complaining witness in the case, and the result was to make her look even more like victim. My various discussions with the presiding judge during breaks in the trial led me to believe that a sentence of something easily in excess of 25 years confinement. Prior to the beginning of the punishment trial, I spoke with the lead trial attorney for the prosecution, who intended to recommend that the court sentence Tuton to life, believing that Tuton had sexually assaulted the complainant on other occasions. The prosecution was interested in finality in the case for the complainant's sake and, therefore, they were willing to give client a lesser sentence in order to waive appeal–not because there was any apparent error in the trial but instead because the complainant was feeling that the nightmare would only be extended by an appeal. Thus, a deal was discussed by counsel. When I presented the status of negotiations to Tuton, he thought it was a great idea, he accepted the deal willingly and knowingly.

4.      Part two of the court's order directing this affidavit inquires whether I could have established the complainant's bias or motive by pointing out her prior allegations of sexual assault directed against other persons. Tuton misses the mark with this complaint. I did cross examine the complaining witness, and other witnesses, regarding the complainant's credibility in numerous ways. I caught her lying in open court about whether she had even given testimony in court on any prior occasion, which she denied but eventually admitted. I accused her repeatedly of being a felon who got away with it (drugs on school grounds), of being a prostitute, and of being a thief. I was even able to make

it sound like she had pending cases.   I showed that she was a juvenile delinquent with a long record of criminal and delinquent conduct.  I showed that she was a drug addict.  She admitted to being a runaway, and that she had intentionally and knowingly lied to various juvenile court judges, and that she ran away from a juvenile court placement, and that she lied to police during this investigation, and that she had told different stories about the events in question.   The complainant did admit to making sexual assault allegations against at least one other person, Carmelo, and she admitted that nothing ever came of that complaint, and that Carmelo was the one who really messed her up, and I attempted to make it sound like a false allegation.   Further, I established that the complainant had also accused her uncle Pablo of sexually assaulting her, and that nothing even came of those allegations, and I intimated that nothing happened to Pablo because the allegations were true. Attacking the complainant for making allegedly false sexual assault allegations against Carmelo and Pablo was not a good strategy, and I told this to Tuton, but he insisted that I attack the complainant in this way.   Instead, these attacks made the complainant look more like a poor little victim . . .

5.   Once Tuton's primary defense, specifically that he was incarcerated on the alleged date of the conduct on trial, had been disproved by the prosecution's witnesses, Tuton admitted to me on a break that he did remember being out of custody on the date of the alleged sexual assault, and that he did remember seeing the complainant in the house where the sexual assault occurred. Further, Tuton told me that he got so drunk that he could not remember whether he had done the acts which complainant accused him of perpetrating or not.  By the time the guilt-innocence trial was done, Tuton had accepted the fact that he probably did do what the complainant had accusing him of doing.

*Ex parte Tuton*, No. WR-76,202-02, Supp. at 11-13.

The record shows Tuton was properly counseled by his attorney about witnesses, trial tactics, cross-examination of the victim, and forfeiture of his appellate rights.  Moreover, defense counsel did cross-examine the victim on subjects meant to damage her credibility.   Trial counsel also bargained for and secured a more lenient sentence in exchange for Tuton's waiver of his appellate rights.   Therefore, Tuton has made no showing that counsel's actions were unreasonable under prevailing professional norms, or that his handling of the case demonstrated an unreasonable trial

strategy. *See Strickland*, 466 U.S. at 687-89; *Wilkerson*, 950 F.2d at 1065. The state habeas court's rejection of Tuton's ineffective-assistance claims was neither contrary to, nor involved an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d).

In addition, even if Tuton could show deficient performance with regard to any of his claims, Tuton fails to demonstrate the requite prejudice. Indeed, the state habeas court found that Tuton did not suffer any prejudice from his defense counsel's performance. *Ex parte Tuton*, No. WR-76,202-02 at 55, Supp. at 15. Based on the substantial evidence of his guilt presented at trial, Tuton cannot prove prejudice. Moreover, he fails to provide the testimony his uncalled witnesses would have provided and thus does not show how a failure to call those witnesses could have affected the verdict. Defense counsel did follow Tuton's request to cross-examine the victim in order to highlight her criminal past and problems with authority and drug addiction, but the cross-examination resulted in the victim appearing vulnerable before the jury. Tuton also cannot show prejudice based on defense counsel's performance in obtaining a more lenient sentence from the State in return for Tuton waiving his appeal rights. Based on the prosecution's intended approach to the punishment trial, Tuton would likely have received a harsher sentence, possibly a life term, had his defense counsel not obtained Tuton's sentencing deal. *See Ex parte Tuton*, No. WR-76,202-02, Supp. at 12. Lastly, the state habeas court determined that any error in the alleged date of the commission of the offense did not render the indictment defective, again foreclosing the possibility of a prejudice showing.

Tuton fails to overcome the deference due the state court's denial of his claims. Based on defense counsel's affidavit and the record in the case, Tuton has not rebutted the state-court factual determinations with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), nor has he

demonstrated an unreasonable application of the clearly established law of *Strickland* or an application contrary to that law, *see* 28 U.S.C. § 2254(d).  The Court should deny Tuton's ineffective-assistance claims.

### B.  Waiver of Appellate Rights

Tuton contends that he waived his direct appeal rights involuntarily.  Mem. at 1.  The Director argues that the claim is conclusory and also points out that the claim was rejected by the state court, and because the rejection was reasonable, Tuton's claim must fail.  Answer at 20.

The state habeas court determined that Tuton waived his right to appeal in exchange for the prosecution's agreement not to pursue sentencing enhancement allegations that would have increased Tuton's potential sentences to ninety-nine years, and might have increased his minimum punishment to twenty-five years, and the Texas Court of Criminal Appeals agreed with the finding when it rejected Tuton's application on the merits. *Ex parte Tuton*, No. WR-76,202-02 at cover, 55; *Salazar v. Dretke*, 419 F.3d 384, 398-99 (5th Cir. 2005).

Tuton has not rebutted the state-court factual determination with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), nor has he demonstrated that the state habeas court's rejection of his claim challenging the voluntariness of his waiver of his appellate rights was contrary to, or involved an unreasonable application of, clearly established federal law, *see* 28 U.S.C. § 2254(d). This claim should be denied.

### C.  Defective Indictment

Tuton challenges the validity of the indictment as void and defective based on the dates it included for the charged offenses.  Pet. at 7.  The Director contends that the claim is conclusory and should be dismissed for failure to state a claim upon which habeas relief can be granted and,

alternatively, denied because the state court's rejection of the claim was reasonable.  Answer at 20-22.

"[T]he sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction."  *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994).  In addition to the deference due under the AEDPA, the Fifth Circuit has directed that district courts "accord due deference to the state courts' interpretations of its own law that a defect of substance in an indictment does not deprive a state trial court of jurisdiction."  *Id.* at 69.  Moreover, the Fifth Circuit has held that "the state courts' implicit findings . . . that the indictment[ was] not fundamentally defective should end the inquiry."  *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985); *see also Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988) (holding that Texas Court of Criminal Appeals's denial of habeas application implicitly rejected petitioner's contention that state court indictment was fundamentally defective, thus foreclosing his challenge of indictment in federal proceeding).

In this case, the state habeas court determined that "[a]ny error in the alleged date of commission would not render the indictment defective."  *Ex parte Tuton*, No. WR-76,202-02 at 55; *see also id.* at cover (relying on written findings of trial court).  Because the Court of Criminal Appeals rejected this claim, consideration of the claim by this Court is foreclosed*.  See, e.g., Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993).  The Court should deny the defective indictment claim as well.

### D.     Actual Innocence

Tuton's remaining claim is that he is actually innocent of his sex-crime convictions.  Mem. at 2.  The Director counters that a claim of actual innocence does not state a basis for federal habeas

14

corpus relief, absent an independent constitutional violation, and his claim is thus not cognizable. Answer at 22-25.  The Director also argues that Tuton provides the Court with no newly discovered evidence to support his claim and the state courts offer Tuton an avenue to address this claim.  *Id.*

The state habeas court rejected this claim after determining that "[a]ny potential problem with the complainant's credibility would not establish that applicant is actually innocent.  Applicant does not allege any evidence that might refute her testimony."  *Ex parte Tuton*, No. WR-76,202-02 at 55.

Claims of actual innocence are not cognizable on federal habeas review and do not state a ground for relief "absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Boyd v. Puckett*, 905 F.2d 895, 896-97 (5th Cir. 1990).  Thus, a claim of innocence is not itself a constitutional claim on federal habeas review, but acts instead as "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Schlup v. Delo*, 513 U.S. 298, 314 (1995) (quoting *Herrera*, 506 U.S. at 404); *see also House v. Bell*, 547 U.S. 518, 537 (2006).  Moreover, "even if a truly persuasive claim of actual innocence could be a basis for relief, the Supreme Court made clear that federal habeas relief would only be available if there was no state procedure for making such a claim."  *Graves v. Cockrell*, 351 F.3d 143, 151(5th Cir. 2003).

Accordingly, Tuton does not present a cognizable claim and this claim should also be denied.

## RECOMMENDATION

It is recommended that Tuton's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C.

15

§ 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases in which a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Tuton's petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

16

being made.  The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 30th day of January, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE